Arguing for the appellant is Attorney Hunsinger. Arguing for the appellee is Attorney Zenziletta. Are you ready to proceed? Yes. All right, let me do so. Yes, please.   I should have called the case. The case number also is 5-25-0320. Warren. May I start? Yes, please. Thank you. My name is Zachary Hunsinger and I represent the defendant appellant Holly Creekpaum. Before addressing the merits, I will address the jurisdictional concerns raised in this court's March 13, 2026 order. And after that, I will address three issues regarding why we believe the order should be reversed, notably based off of a standard review and our own merits per argument. Regarding the jurisdictional issue, the court's order questions whether a final judgment was entered in this matter, citing the distinction between an order of default and a default judgment, and the requirement that a plaintiff prove up damages even after a default order. We believe, Your Honors, that this requirement does not apply here, as this is not a civil action lawsuit seeking monetary damages. Gavilo and Creekpaum were litigating a probate matter, a will contest, regarding conflicts of wills of a decedent in the circuit court of Madison County. In a will contest, the relief sought is of a defilatory nature, which often, which will, excuse me, which will, as in the document, controls as a matter of law. There are no damages to prove up. The default itself in this context effectively resolved the entire dispute. When the trial court told Ms. Creekpaum, due to your not filing an answer, you lose by way of default, dismissed the parties, and concluded what was scheduled to be a trial on the merits. That was not merely an interlocutory order. That trial court treated as dispositive on the merits. No further hearing was scheduled. No prove up was ordered, and the case was effectively over. In order to demand a conventional prove up in a will contest would be to import civil damages requirements into a probate proceeding where they do not fit. Requiring more would be virtually no will contest order could ever be appealed, which is an untenable result. Well, why not? First of all, doesn't the Code of Civil Procedure still apply in probate? Yes, it does. Okay. And so in this situation, there was no specific relief granted by the trial court. Is that correct? The trial court's order does not say the specific relief. It just says the default judgment was not granted. And so why not require a prove up, whether that be by evidence or by affidavit, to prove the allegations in the complaint, to establish the grounds for the will contest, and then enter a judgment order granting the relief that's being requested? Why did that not happen? Well, if that did not happen, even though our argument is that the substance of that order on December 2nd does include that, because the only relief that Mr. Gabilo sought was to have his order, his will entered in the other will deemed void. And so the prove up wouldn't have been necessary. It would have caused additional time and expenses. If no final judgment was ever entered, as you're alluding to, though, we believe that, too, would be means for reversal, because the trial court treated that default as dispositive, dismissed the parties, and refused to allow the case to proceed to trial. And then, as you're alluding to, never entered a final judgment. If the trial court entered something less than a final judgment, but treated it as case ending, Ms. Kriepbaum's rights were terminated without the due process that attends either a proper default judgment or a trial on the merits. Either way, we believe this court should take jurisdiction and correct what happens. If this court has any doubt, though, about the Rule 301 finality, Rule 304b1 independently provides jurisdiction. Rule 304b1 and its committee comments express the contemplate that orders in a state administration which finally determine a party's rights are immediately appealable without a special finding. The December 2 order effectively terminated Ms. Kriepbaum's will would not be determined that Ms. Kriepbaum's will would not be given effect. And that's precisely the type of order that the comments in the rule contemplate. And so, for those reasons, we believe this court has jurisdiction, both because of the Rule 304, which requires the probate administrator to be considered in itself a microcosmic reflection of the entire proceedings, because if my client was not allowed to appeal that right away, then the case would continue on into probate, and the will would be probated. She'd lose her rights as a state beneficiary or heir, and essentially loses everything as a result. So without discussion regarding why I believe the court has jurisdiction in this issue, I'll turn to the merits of the case. This case presents a stark example of procedural formalism overriding substantial justice. And in that sense, I'll address three points. One, that the trial court applied the wrong legal standard. Two, that the trial court abuses discretion in denying Ms. Kriepbaum's motion to vacate. And third, that the oral motion for a default judgment was entered without proper notice or service under Illinois Supreme Court Rule 105. The Illinois Supreme Court and People v. Ralph, or Enri Haley D., 2011, Illinois 110886, drew a clear and explicit line between the standards governing Section 2-1301 and Section 2-1401. Under Section 2-1301, a moving party need not show the existence of a merit to raise defense or a reasonable excuse for failing to timely assert one. The overriding consideration is simply whether substantial justice is being done between the litigants and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits. And paragraph 50, the court says so in paragraph 57. In contrast, Section 1401 imposes a substantially greater burden, requiring the movement to demonstrate both a meritorious defense and due diligence in pursuing that. Ms. Kriepbaum filed her motion on the same day as the default, well within the 30-day window of Section 2-1301. Therefore, the requirements in Section 2-1401 were never applicable. Although the trial court's order in March 17 acknowledges this distinction on its face, it then immediately violates that distinction. The court correctly quoted Wells Fargo Bank v. McCluskey for the proposition that the party need not necessarily show a meritorious defense and a reasonable excuse. Yet in that very same order, the court denied the motion specifically because the proposed answer fails to assert any affirmative defenses. Second, because the defendant proposed answer is deficient and offers no defenses. And third, because the defendant's lack of diligence would result in a hardship to the plaintiff. That is the 2-1401 standard. Applying a factor that is dispositive that the Illinois Supreme Court in Haley has expressly said cannot be dispositive is not a matter of discretion. That's a legal error, and it requires de novo review. The internal tradition in the order itself is a reversible error. A trial court that recites the correct standard and then applies the wrong one has not, in any meaningful sense, applied the correct standard at all. The court's acknowledgment of McCluskey on page 1 provided no protection. Ms. Creekbaum, because the court immediately proceeded to deny her motion on the grounds that Haley explicitly prohibited. Didn't the trial court specifically say they were applying the other statute? No, Judge. The trial court said they were using 13-01, cited the correct case law, but then applied the factors under 14-01. And that's why we believe it is a de novo review, because it's the wrong application of that specific law. But the trial court can still consider those factors, correct? Absolutely. It's not the only. There's other factors to consider, but Haley says those factors cannot be dispositive. And when the trial court doesn't indicate that there are other factors considered, we can only surmise that those factors were dispositive, as was the case here. And the deficiency. Are we supposed to surmise, or do we give the presumption that the trial court was aware of the law and applied the law? I think Judge Foster gets it right nine times out of ten. And I think that's why we're here, though. He got it wrong in this instance, and it's our job to evaluate whether that happened or not. Of course, trial judges deserve deference in that sense, but because it's a de novo review, you don't necessarily have to weigh the trial court's understanding of the law in that sense. You can see if the judge got it right. The deficiency finding asks a question.  The trial court, I believe, found in the order that the defendant would suffer or there would be a hardship suffered if this was vacated. Hardship on the trinket. And so what particular hardship would there be beyond the leg? I don't know, Judge. And frankly, that is one issue I take with this, because it wasn't until Mr. Gavilo's reply brief that any sort of hardship was articulated. In this instance, if there was any claim of hardship or prejudice to Mr. Gavilo, it's self-inflicted. Because if you consider the timeline, Mr. Gavilo filed this amended complaint on March 10, 2023. But the answer was due within 30 days, by April 2023. And yet, Mr. Gavilo never filed a motion for default on April 2023. Not before the first trial date in January 2024, which was continued into February 2024. Again, no motion for default was filed at that moment. February 2024, the trial was also continued to a management conference in June 2024. That was also continued to July 2024. Mr. Gavilo waited approximately 21 months through two scheduled trial dates before ambushing this creek bomb with an oral motion for default on the morning of the third trial date. If there's any hardship in this case, Mr. Gavilo created it himself by waiting until everyone was assembled at the courthouse, witnesses in hand, and to raise a procedural default he had known about or could have discovered since April 2023. We do not believe he can manufacture his own hardship and then use it as a shield against vacators. There are certain circuits that have local rules that require that motions be reduced in writing before they are presented to the court and filed within a certain period of time prior to court. Does this particular county or circuit have such a local rule? No, not to my knowledge, Judge. But that is why we believe due process is required so that parties have an opportunity to meaningfully contribute and participate in their case. In this instance, that did not happen because it was the morning of the trial and the moral motion was submitted at that moment. This creek bomb simply did not have an opportunity to adequately respond to that. And in the Supreme Court case of Ayala, it presumes, the Supreme Court addresses that specifically, saying that due process requires that the parties who have been appearing, and in this instance, Ms. Creekbaum appeared at every single hearing. There's no indication that she's missed other orders. There's no indication that she's missed any other deadlines. In fact, she was represented by a counsel at that time when the alleged amended answer was not filed. She did file an answer, just not an amended answer. And that was what she got dinged on. She thought her attorney had done that and was led to believe that her attorney had done that. I know I have one more minute, so I'll just briefly conclude. I have more than that. Until the yellow light comes on solid, you have one. Okay, well, thank you. Then I won't feel so rushed through my conclusion. Each of these three arguments presented above is sufficient to require reversal. And I did not say this, so let me go back to this. Even if you believe that the trial court did apply the correct standard in its 1301 analysis, we still believe the trial court abuses discretion in denying Ms. Creekbaum's motion to vacate. The overriding consideration is not whether a party can demonstrate a meritorious defense. It's whether simply substantial justice is being done and whether it's reasonable under the circumstances to compel the other party to go to trial on the merits. As I said earlier, the failure to file an amended answer rested entirely with her former attorney, not with her. When she told the court, I paid my attorney to do that, she was not making excuses. She was describing exactly the kind of attorney error that Ingray and Haley recognized as compelling ground to set aside a default. Mr. Caviello offered no specific showing of hardship because there was none, as the trial was already scheduled and both parties were prepared to proceed. We also believe that the trial court should have used the analysis for 1301 and not 1401 for the reasons I previously mentioned. And then finally, the default judgment itself should never have been entered as Rule 105 requires the opportunity for parties to respond and not be met with surprise to their detriment. Mr. Caviello's motion was made orally. At the moment, the trial call was called to order, and she was never given an opportunity to respond. As a result, we believe that Your Honor should reverse the December 2 and March 17 orders and remand this back to the trial. Counsel, the answer to the amended complaint filed December 2nd of 24 and then the affidavit filed that same date bears what appears to be the signature of former counsel, Ms. Vogel. And at that time, I believe, again, she was not counsel of the record. And the affidavit is not sworn. Are we permitted to consider this, or was the trial court permitted to consider these? Your Honor, the affidavit is not sworn, and I don't think that you are necessarily entitled to consider this, but I don't think you need to consider this because she was not given an opportunity to fix or cure any defect. So she filed what she had that day as a pro se litigant. If she was given 30 days, which is typically normal, she would have been able to have a correct amended answer on file. Instead, she, as a pro se litigant who just was told, you lost, panicked and filed exactly what she had, and that's what we have as a result, which is, unfortunately, procedurally deficient. Your time is up. Justice Hackett, any questions? No, thank you. Other questions? No, thank you. Appreciate your argument. Thank you. We have time for rebuttal in a moment. Attorney Zinzaletta, will you proceed? May it please the Court. My name is Angie Zinzaletta, and I represent Robby Gavillo in this matter. First, Your Honors, I want to discuss the jurisdictional issue. I was so caught up in some of the appellate issues in this case, I, myself, missed the clear, blaring jurisdictional issue here. I do also agree, even though this is kind of a sticky issue involving a probate case, this is not a case filed in probate. This does not involve pleadings in the probate matter. So I do agree with the appellate panel today that this Court, the trial court in this matter, should have at least done the damages portion of its order and not just determined liability. So I do believe that the appellate court does not have jurisdiction over this matter, even though that one issue as to the liability of the parties was decided. And that is based off of the Jackson v. Hooker case. And the relief thought here is to set aside this particular will under various theories, correct? That's what was requested. Correct. As opposed to damages. Correct. As counsel points out. But still, without any form of judicial relief that has been ordered, how is it enforceable? That's correct, Your Honor. And I agree with you that it's not quite enforceable because it fails to check that second checkmark box. So basically in the order, what my understanding is from the default order, is that liability was determined for prove-up to occur at a different date. Now, with the pro se filings in this case, plus the subsequent motion to vacate an appeal, the prove-up date or hearing date, I think, was lost in the wash, essentially, as all the pleadings were going back and forth. But I do agree with the court that liability was determined on the first end, that first checkbox, but not the prove-up portion on the second end. So even if the court was to say that liability was found, the court should have said, because liability was found, here is what that means. So I do agree with the appellate panel with the jurisdiction issue. So we do not have a transcript of these hearings. We have the bystander reports. And so do we know if the court requested that an affidavit be submitted or even discussed further prove-up? I mean, none of this is in the record, I suppose, so it's not fair game. So typically what my habit would be and our habits in this court would be we would prove-up at a later date, just to make sure that everybody is on the same page. Immediately, as Ms. Creek-Palms-Council had noted, she had filed the motion to enter the answer, and then the pleading and briefing operation began, essentially. So the prove-up damages, that hearing was just, honestly, just lost. Moving on to the actual merits of the appeal here, I believe this is a very straightforward appeal. I believe that this case, if the court does find jurisdiction, should be affirmed by Judge Foster. Judge Foster did exactly what this appellate panel would expect. He employed the McCloskey factors, and he also cited that city case. There's a reason he cited that case, because it's a good discussion as to what those factors mean. He specifically, in his order, says that meritorious defense is not the only thing to consider. However, it will be part of his factorial analysis. Now, I think this is really important, Your Honors, because as this case proceeded, we get to the trial date, we move for the default judgment for the liability portion. At no point in time after that, even though months have passed, did Ms. Creek-Palms, whether represented by different attorneys or herself being pro se, actually submit a sufficient answer. So a lot of the pleadings in the record, so the answer that was submitted, was signed by an attorney who's no longer on the case. It's an unsworn affidavit. Even the answer itself of substance would not pass muster for a code of civil procedure. So that's a big issue here, because it shows a couple of things. We're already in a delay mode, so my party, my litigant, who has been represented by the same attorneys the whole time, is undergoing another delay. On top of the fact that Ms. Creek-Palms has been notified that you've done something wrong here, right? And her counsel says she was scared, she needed to file this. If you know it's that important, why wouldn't counsel file for leave to file an amended answer, a correct answer? That's what you would do here, and that's our complaint. Even if this case was reinstated, it's still going to drag along, because Ms. Creek-Palms will not satisfy the legal requirements to keep the case moving. That's the concern here. So this is the only hardship delay? No, Your Honor. I think it's litigation costs as well. My client writes to his gamble family home, the stress of ongoing litigation. Is it doing substantial justice if a person hires an attorney, they think their attorney is doing stuff, and then when they come to court pro se, they find out on the morning of a motion for default that, hey, your attorney didn't file anything. Is it doing substantial justice to punish the client because the attorney didn't get something on file? I think it does, Your Honor, for a couple of reasons in this case, and let me explain why. I know that answer seems harsh. First, she was represented by counsel at the beginning, and she's represented by counsel today. The same counsel she's represented by today was in the trial court level with her, filed a motion to vacate, et cetera. So Ms. Creek-Palms, whether she's a pro se litigant or representative, she still has to follow the rules of the court. Even with decisions recited, the court says, hey, it stinks. Your attorney messed up, especially when they're trying to do this. But we have rules in our court system for a reason, and we don't have a code of civil procedure for pro se litigants and one for trained attorneys. And we don't have one that's a hybrid either, that when your attorney drops you or you fire your attorney, that you get special treatment. That's not how it works. So I do believe that there is substantial justice in this case. She has been represented. Given the abuse of discretion standard that has to be applied in a 1301E case, I believe that the trial court properly did a factorial analysis under McFoskey, affirming the decision in this case. As for the Rule 105 issue, I believe that issue is completely waived. It was never brought up at the trial court level. Plus, I believe that rule only applies when we're talking about new parties and new relief. All in all, Your Honors, we believe that Judge Foster did the appropriate thing in this matter, and we would ask the trial court to affirm the motion to vacate. Unless the justices have any other questions, we will rest on that brief. No questions at this time. Other questions? Thank you. Thank you, Your Honor. Attorney Huntsman, you're good to go. If you may please, may I begin? Yes. Thank you. Mr. Cavillo here is arguing that the matter, the default prove-up was lost in the shuffle, and we disagree with that as the judge dismissed the parties and an order was entered at that point in time. That's precisely the moment when you begin scheduling your prove-up dates and anything else that needs to happen at that point. The idea that motions being filed back and forth is not an accurate description of what was going on as the motion that was pro se filed occurred that afternoon after the order was written up and entered. So this idea that it's getting lost in the shuffle is not accurate. I also want to point out about the liability portion. There's no liability requested for damages or anything in their amended complaint. Six separate times they asked that the living trust be deemed, that Mr. Cavillo's living trust and will be deemed void and that the last will and testament of Melissa Cavillo in 2017 be deemed void, valid, and not revoked. They repeat that six different times. They don't ask for any sort of monetary damages, nothing along those lines. Now that they see an opportunity to claim on something that might benefit them, are they bringing it up? Again, it's not also in their reply brief as well. It just underscores the fact that everyone thought this was going to trial and that there was no indication of anything amiss at this point in time. And the fact that they showed up at trial with witnesses at hand ready to proceed, they affirmatively said were ready to proceed when they were on the record. And as indicated by the agreed by sinners report that's certified by Judge Foster, to argue that a delay is the undue hardship or that Mr. Cavillo won't have access to the family home, Mrs. Kriegbaum is living in that home and she'll lose her home if this is completely enforced. And the delay is big. So the current status at the time was then that your client was living in this home and then if this will was set aside then that home would revert back to the other party? That's correct. So why would that not be hardship and delay in this situation? Because he's not living in that home at this moment. My client is. My client won't have a place to stay as a result. But on the other side, isn't the hardship not being able to live in the home? Do you feel you're entitled to it? I don't think he is entitled to it. That's why we're arguing about the wills. That's the disputed question. Right. But if in fact he would prevail and if his theory is correct, then would that not constitute hardship to be denied the use and possession of the home? Yes, that would be considered hardship if that was approved. But in this instance, the hardship that he's articulated in his reply brief or in the oral arguments is that delay is the hardship. He never brought up the home until today. And the delay is his own fault. He waited 21 months to file a motion for a default judgment. And he was there ready to proceed to trial. This delay was caused by him by filing this oral motion or default on an untimely basis. And we did not waive our argument on Rule 105. As it was, although not explicitly stated, it was argued throughout and implicitly through our pleading and our motion, which preserves the issue before this court. Even if you set the Rule 105 aside entirely, the lack of any written motion, advance notice, or an opportunity to respond is independently significant to the substantial justice analysis. And given that no time to respond and no opportunity to cure had occurred, that has denied my client the basic procedural fairness and due process Illinois default framework is designed to protect. And to quote the in-rate custody of AA law, 800 NE 2D 524 at 537, parties who have properly appeared in an action are entitled to notice of any impeding motions or hearings. She received no notice of the motion for default. Thank you, Judge. I'm happy to entertain any questions. Questions, Justice Hackett? No, thank you. Thank you. We've read the briefs and we appreciate the arguments in the briefs and your arguments today. We will take the matter under advisement and issue a decision in due course. Thank you.